UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


TRAVIS H.,[1]

                Plaintiff,

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 6:20-cv-00479-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Travis H. seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying his application for Disability Insurance Benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433. This court has jurisdiction to review

the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons

set forth below, that decision is REVERSED AND REMANDED for further proceedings.

Plaintiff originally filed for DIB on June 6, 2017, alleging disability beginning on

November 1, 2016. Tr. 159-67. At the hearing, plaintiff amended his alleged onset date to

---

[1] In the interest of privacy, the court uses only plaintiff 's first name and the first initial of his last
name.

November 15, 2016.  Tr.  36.  His application was initially denied on August 8, 2017, and upon

reconsideration on November 15, 2017.  Tr. 63, 95.  Plaintiff requested a hearing before an

administrative law judge ("ALJ"), which took place on January 8, 2019.  Tr. 32-62.  After

receiving testimony from plaintiff and a vocational expert ("VE"), ALJ Cynthia Rosa issued a

decision on March 26, 2019, finding plaintiff not disabled within the meaning of the Act.  Tr. 13-

26.  The Appeals Council denied plaintiff's request for review on March 30, 2020.  Tr. 1-3.

Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this

court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by

isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-

10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This

court may not substitute its judgment for that of the Commissioner when the evidence can

reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746

(9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational

interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since November 15, 2016, the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairment: multiple sclerosis ("MS"). *Id.* The ALJ recognized another impairment in the record, i.e., depression, but concluded this condition to be non-severe. Tr. 16.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform light work as defined in 20 C.F.R. § 416.967(b), except plaintiff can occasionally climb ramps and stairs; can never climb ropes, ladders, or scaffolds; can never balance; can occasionally stoop, crouch, crawl, and kneel; should change position between sitting and standing in 30-60 minute intervals for a maximum sitting time of six hours in an eight hour day; can frequently finger and handle bilaterally; and should avoid exposure to hazards. Tr. 18.

At step four, the ALJ found plaintiff incapable of performing past relevant work. Tr. 24.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy including final graphic arts technician and sign erector/repairer. Tr. 24.

Thus, the ALJ concluded plaintiff was not disabled. Tr. 26.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly discounting his subjective symptom testimony; (2) erroneously assessing the medical opinion evidence of Kyle Smoot, M.D., and Brittany Farro, PA-C; and (3) formulating an erroneous RFC.

## I.     Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p.

*See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 19. Each of the ALJ's reasons is examined in turn.

### A.    Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is supported with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. When coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)). Otherwise stated, a lack of objective medical evidence may not form the ALJ's sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick*

*v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")); *see* C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.). Moreover, an ALJ's rejection of symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." *Brown–Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citations and internal quotation marks omitted).

Here, the ALJ noted that plaintiff "alleges he cannot work because of the symptoms of his multiple sclerosis, which include overwhelming fatigue and poor balance as well as pain and numbness in his hands, muscle spasms in his legs, and general diminishment of his coordination and vision." Tr. 18. The ALJ also recognized that plaintiff's MS symptoms had worsened:

> A review of the medical record shows that the claimant was seen in the emergency department in April of 2017 for . . . blurry vision, hand and leg numbness, changes in his coordination, and intermittent dizziness that had been progressively worsening for "the last couple months" following a long period (six years) of doing well without treatment for his multiple sclerosis.

Tr. 19 (citing Tr. 325, 430). However, the ALJ found that "[w]hile enough evidence is included in the file to identify his impairments, the claimant's medical record does not support the alleged severity of his symptoms." Tr. 19.

The ALJ made eight paragraphs of specific findings, extensively identifying evidence in the record that contradicted the extent of plaintiff's claimed limitations (Tr. 19-20): *e.g.*, "[w]hile the examination notes of Derek Halvorson, MD show the claimant had generalized weakness, his gait was stable" (citing Ex. 3F/ 12 and 5F/3); "[n]otes by Kyle Smoot, MD from

August of 2017 show that the claimant reported he was 'doing well' despite some occasional dizziness and blurred vision, and that these symptoms had actually improved since earlier in the year[,]" (Ex. 11F/6), "he had no new symptoms to report" (Ex. 11F/6-7), "intact coordination" (Ex. 11F/9), and "claimant showed slight improvement compared to earlier in the year . . . with no new focal deficits" (Ex. 11F/11); "[n]otes by Stuart Rosenblum, MD, from October and December of 2017 show that despite reports of pain, numbness, weakness, and muscle spasms, the claimant stated that he had improvement in his general activity level, walking ability, normal work (which includes both work outside the home and housework), sexual activity, and sleep[,]" (Ex. 18F/6 and 9), and "Dr. Rosenblum's examinations showed that the claimant had grossly intact motor function" (Ex. 18F/6-7 and 9-10); "Shea DeKlotz, PA-C, saw the claimant in April of 2018 . . . [and] found that while the claimant had an antalgic gait, he was not in acute distress, [and] demonstrated grossly intact motor and sensory functioning" (Ex. 18F/3); and in February 2018, Leah Gaedeke, FNP, found that plaintiff had "intact coordination" and "showed slight improvement and found . . . no new focal deficits" (Ex. 16F/4-5).

In sum, the ALJ "point[ed] to specific facts in the record which demonstrate[d] [plaintiff] is in less pain than [he] claims." *Dodrill*, 12 F.3d at 918.

### B. Activities of Daily Living

An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to illustrate a contradiction in previous testimony or demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). A claimant need not, however, be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722). The

ALJ must identify specific testimony that was inconsistent with the plaintiff's activities of daily living or how the plaintiff's capacities were transferable to a work setting. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.") (citation omitted); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial portion of the day engaged in pursuits involving the performance of functions that are transferrable to a work setting, a *specific finding* as to this fact may be sufficient.") (emphasis added).

The ALJ noted:

> In a Function Report dated July 5, 2017, the claimant indicated that he has difficulty with lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and using his hands.

Tr. 19 (citing Tr. 220). However, the ALJ observed:

> During the hearing, the claimant stated that lives with his wife and two young daughters, makes them breakfast and snacks, helps his children with homework, cleans the kitchen and washes dishes, helps his wife with laundry, and goes to church once a week. He also testified that he is able to drive, but seldom does it and only for short distances. He stated he will drive down to the end of his driveway to pick up his daughters after school.

Tr. 19; *see* Tr. 37-38, 42-43.

But the ALJ failed to identify what specific testimony was inconsistent with plaintiff's activities of daily living or explain how plaintiff's activities of daily living were transferrable to a work setting. *See Orn*, 495 F.3d at 639. For instance, the ALJ provided no explanation why plaintiff's ability take care for his children, manage his personal care, and do household chores were either inconsistent with his subjective symptom testimony or translated to activities that could be performed within a competitive work environment. *See Fair*, 885 F.2d at 603 ("The

Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").  Plaintiff's attempts at leading a normal life do not prevent him from receiving disability benefits.  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (holding a "claimant need not vegetate in a dark room to be eligible for benefits") (citation omitted).

Also, the ALJ did not address plaintiff's testimony as to his limitations in doing these activities.  For example, plaintiff testified that after he makes breakfast for his family and his wife and daughters leave for work and school in the morning, he is "wiped out" and rests until it is time to pick his daughters up from school.  Tr. 42.  His wife "has to do the bulk" of the cooking, grocery shopping, and laundry.  Tr. 45.  In the Function Report cited by the ALJ, plaintiff stated that he "sometimes" takes care of his daughters; he "get[s] dizzy in [the] shower when [he] close[s] his eyes"; "his wife does the cooking" and that "[he] used to love to cook" but now "can't stand for long periods of time"; "[he] can't drive long distance[s]"; he shops only once every two weeks; and he "tr[ies] to go to church on Sundays."  Tr. 216-19.

In sum, substantial evidence does not support the ALJ's finding, and, accordingly, the ALJ erred in relying on plaintiff's activities of daily living as a basis for discounting his testimony.

### C.    Effective Treatment and Treatment Noncompliance

The ALJ also discounted plaintiff's testimony on grounds that his impairments have been alleviated by effective medical treatment and plaintiff's noncompliance with treatment.  *See* Tr. 20.

An ALJ may discount a claimant's testimony based on effective treatment. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir. 2018) (evidence of effective treatment provides a valid basis to discount claimant's subjective symptom testimony); *Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016) (holding that the ALJ met the clear and convincing reasons standard, and stating that the ALJ appropriately discounted the claimant's testimony on the ground that his "condition improved with treatment," because "'[i]mpairments that can be controlled effectively with [treatment] are not disabling'") (citation omitted); *Tommasetti*, 533 F.3d at 1040 (ALJ properly rejected claimant's subjective complaints where medical records showed that she responded favorably to physical therapy and medication). An ALJ may also rely on a claimant's non-compliance with treatment to discount testimony regarding the intensity or persistence of symptoms. *Tommasetti*, 533 F.3d at 1039; *see also* SSR 16-3p, *available at* 2017 WL 5180304, at *9 ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Plaintiff contends that the Commissioner's effective treatment and treatment noncompliance arguments are impermissible post hoc rationalizations and that, in any event, the ALJ failed to support these findings with substantial evidence. Reply 7 (citing *Bray v. Comm. Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009)). Although the ALJ's analysis of plaintiff's effective treatment and treatment noncompliance is not a model of clarity, the court can nevertheless discern her path. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that ALJs do not err if their paths "may reasonably be discerned, even if [they] explain[] [their] decision[s] with less than ideal clarity"). Thus, the court proceeds to the merits.

### 1.     Effective Treatment

Regarding effective treatment, the ALJ noted: "the claimant underwent a five-day SoluMedrol infusion cycle in late April of 2017 and corresponding notes show that the claimant tolerated the treatment well, reported no new or worsening conditions, and stated that his vision improved slightly"; "[t]he claimant was seen by providers at Oregon Interventional Pain Consultants from the fall of 2017 through the spring of 2018, and these records show that he responded well to treatment and consistently reported improvement in his overall functionality"; and "Shea DeKlotz, PA-C, saw the claimant in April of 2018 [, and ] . . . the claimant . . . state[d] that his pain management treatment had improved his functioning in multiple areas, reporting an increase in his general activity level, walking ability, normal work (which includes both work outside the home and housework), sexual activity, and sleep." Tr. 20 (citing Tr. 501-05, 528, 541-42, 526-27).

However, the ALJ made no mention that plaintiff's pain management required daily narcotics, i.e., Norco 10-325 mg (hydrocodone-acetaminophen) that he had been taking since 2015. The ALJ also said nothing of PA Farro's chart note from September 12, 2018, that plaintiff had "failed Avonex, and apparently required more aggressive treatment." Tr. 541. PA Farro noted that, "[d]ue to [plaintiff's] relapses, he was recommended more aggressive treatment with infusion therapy." *Id.* Plaintiff had finished his loading dose of Ocrevus on June 7, 2018, and was due for another dose on December 7, 2018. *Id.* Medication helped his spasticity, but not his daytime fatigue. *Id.* Even though plaintiff had an MRI in 2017, PA Farro ordered another MRI in November 2018 due to plaintiff's "worsening fatigue and some potential left hand astereognosis." *Id.* The results of this MRI showed "a mixed pattern of progression and remission when compared to the previous examination." Tr. 536. One lesion in the left frontal

lobe had improved, but "[l]esions within the medial left frontal lobe white matter and right periatrial white matter have increased[.]" *Id.*

Thus, the ALJ impermissibly discounted plaintiff's testimony based on effective treatment. *See Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) ("[T]he ALJ must show that the treatment was capable of providing lasting relief.").

### 2. Treatment Noncompliance

Regarding treatment noncompliance, the ALJ observed: "[t]he claimant stated that his recent increase in pain was due to . . . not taking his medication"; "[FNP Gaedeke] indicated that the claimant was not taking his medications as prescribed and that could explain his increased fatigue"; and despite PA Farro's "recommendation for physical therapy, the claimant had not followed through yet." Tr. 20-21 (citing Tr. 521, 527, 542).

However, the record shows that plaintiff cut down on his pain medication in order to make the medication last until a delayed doctor's appointment, and the medications he stopped taking included Adderall and duloxetine, neither of which were prescribed for energy. Tr. 518 ("Adderall . . . was prescribed for focus attention not energy."); Tr. 539 ("He has had increased depression. [H]owever[,] [h]e felt that when he was taking his duloxetine 40 mg regularly this was helpful."); Tr. 527 ("He had to cut back on his medication recently because he was not able to come in and so had to have make his medications last."). Therefore, of the ALJ's three citations to the record, only one of them arguably supports a characterization that plaintiff was noncompliant with treatment. *See Harvey v. Colvin*, No. CV 13-5376-PLA, 2014 WL 3845088, at *10 (C.D. Cal. Aug. 5, 2014) (finding that "one instance of noncompliance does not display a pattern or the type of apathy that would suggest that plaintiff's symptoms are not as serious as alleged") (citation and internal quotation marks omitted). Because the ALJ's finding that

plaintiff was noncompliant with treatment is not supported by substantial evidence, the ALJ improperly discounted plaintiff's testimony on that basis.

### D. Inconsistent and Intermittent Treatment

An ALJ may discount a claimant's testimony upon an "unexplained or inadequately explained failure to seek treatment." *Tommasetti,* 533 F.3d at 1039.

Here, the ALJ discounted plaintiff's testimony because "[t]he remainder of the claimant's medical record shows inconsistent and intermittent treatment that suggests at best only slightly limiting physical restrictions at any given time and fails to support the allegation of a period of significant limitation that exceeds the residual functional capacity." Tr. 21. However, the ALJ provided no evidentiary support for this reason. *See* 42 U.S.C. § 405(g). Therefore, the ALJ improperly discounted plaintiff's symptom testimony based on inconsistent and intermittent treatment.

In sum, the only valid reason for discounting plaintiff's subjective symptom testimony is that it is unsupported by the objective medical evidence. But that reason, standing alone, is insufficient. *See* C.F.R. § 404.1529(c)(2).

## II. Medical Evidence

Plaintiff filed his application for benefits on June 6, 2017. Tr. 13. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II.[2] *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844-01, *available at* 2017 WL 168819 (Jan. 18, 2017). In the new regulations, the Commissioner rescinded SSR 06-03p and broadened the definition of acceptable medical sources to include "Advanced Practice Registered

---

[2] Under Title XIV, 20 C.F.R. § 416.920c applies.

Nurses" (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R.
§ 404.1502. The Commissioner also clarified that all medical sources, not just acceptable
medical sources, can provide evidence that will be considered medical opinions. *See Revisions
to Rules*, 82 Fed. Reg. 5844, at 5853-54 ("[W]e will require our adjudicators to articulate how
they consider medical opinions from all medical sources, regardless of AMS status, to reflect the
changing nature of healthcare delivery.").

Under these new regulations, ALJs no longer "weigh" medical opinions, but rather "will
articulate in our determination or decision how persuasive we find all of the medical opinions
and all of the prior administrative medical findings in your case record." 20 C.F.R.
§ 404.1520c(b). Controlling weight is no longer given to any medical opinion. *Revisions to
Rules*, 82 Fed. Reg. 5844, at 5867-68 ("We will not defer or give any specific evidentiary
weight, including controlling weight, to any medical opinion(s) or prior administrative medical
finding(s), including those from your medical sources."); *see also* 20 C.F.R. § 404.1520c(a)
(same).

The Commissioner considers the following factors in evaluating medical opinions: (1)
supportability; (2) consistency; (3) relationship with the claimant (including length of treatment
relationship, frequency of examinations, purpose of treatment relationship, and examining
relationship); (4) specialization; and (5) other factors, including but not limited to "evidence
showing a medical source has familiarity with the other evidence in the claim or an
understanding of our disability program's policies and evidentiary requirements." 20 C.F.R.
§ 404.1520c(a), (c)(1)-(5).

"Supportability" and "consistency" are "the most important factors" in evaluating the
persuasiveness of medical opinions. 20 C.F.R. § 404.1520c(a). With respect to supportability,

the new regulations state, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  With respect to consistency, the new regulations state, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(2).  The new regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors."  20 C.F.R. §§ 404.1520c(b), 416.920c(b).

ALJs "may, but are not required to, explain how [they] considered" the remaining factors in paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(2).  However, when ALJs find "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, [they] will articulate how [they] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision."  20 C.F.R. § 404.1520c(b)(3).

The court must continue to consider whether the ALJ's analysis is supported by substantial evidence.  *See* 42 U.S.C. § 405(g) ("[T]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Hammock*

*v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) ("We affirm a denial of benefits when the Secretary's decision is supported by substantial evidence and is free from legal error.").

### A.       Kyle Smoot, M.D.

Plaintiff saw Dr. Smoot, a Portland neurologist, until plaintiff moved to Eugene in 2018. Tr. 38, 527. Dr. Smoot submitted four documents to the file: a medical source statement and three letters. Tr. 497-99, 509-11. In his October 4, 2017 medical source statement, Dr. Smoot stated that plaintiff has MS, which is a "chronic & progressive disease with no cure"; he had "multiple relapses in the last year"; and he is "working to establish disease modifying therapy to slow progression of a disability." Tr. 509. Dr. Smoot indicated that plaintiff's MS caused symptoms of fatigue, balance problems, vertigo, numbness/tingling, unstable walking, spasticity, bladder/bowel problems, heat sensitivity, depression, double or blurred vision, involuntary eye movement, and pain. Tr. 509. Dr. Smoot opined that plaintiff "h[as] significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement of gait or station"; his "[g]ait is wide based & spastic; [he is] unable to tandem walk"; and he has "[g]eneralized weakness." Tr. 509.

Dr. Smoot observed that plaintiff would frequently be off-task; does not have the stamina or endurance to work at a job for eight hours per day, five days per week; can stand/walk less than two hours and sit about two hours while needing to change position at will; can lift ten pounds occasionally and less than ten pounds frequently; can never climb ladders; can rarely climb stairs, twist, stoop, or crouch; can occasionally reach, handle, finger, and feel; would take extra breaks more than once per hour lasting at least five to ten minutes; and would miss more than two days of work a month. Tr. 510-11. Dr. Smoot's June 1, 2017 letter states that "[plaintiff's] disability is such that he is unable to work." Tr. 499. Dr. Smoot's June 22, 2017

and August 20, 2017 letters request that plaintiff receive the medication Ocrevus, even though it was denied by his insurance company, because he was in need of such "robust therapy." Tr. 497, 498.

The ALJ found Dr. Smoot's opinion unpersuasive because:

> [W]hile the medical evidence in the file does offer some indication of deficits that have been included in the residual functional capacity, the overall record, including Dr. Smoot's own examination notes and statements made by the claimant, does not support the disabling limitations he lists here.

Tr. 22 (citing Tr. 430, 432-33, 435, 490-91, 493, 501-05, 517, 520-21, 523, 526-29, 531-32, 534-35, 536-37, 539-42, 545, 547-48). The ALJ thereby addressed the supportability factor. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff argues that the ALJ "simply set forth a string of exhibits numbers" and "provided no explanation as to what information was contained within those exhibits that allegedly rendered Dr. Smoot's opinion unsupported." Reply 3. Plaintiff observes that "the ALJ used the same string citation throughout the record, regardless of which opinion she was addressing," and argues that "by citing a list of exhibit numbers and providing no explanation, the ALJ's reasoning amounts to a conclusion and that is insufficient under the regulations which require an explanation." *Id.*

However, if one carefully examines the portions of the record that the ALJ cited, it is possible to pinpoint the evidence that the ALJ says "does not support the disabling limitations" that Dr. Smoot found, including "Dr. Smoot's own examination notes and statements made by the claimant," *e.g.*:

- Dr. Smoot's August 29, 2017 progress notes state, "[s]ince June, [plaintiff] has been doing well. No new symptoms to report. Continues to have occasional dizziness and blurred vision, although this has actually improved." Tr. 490.

- In treatment records from April 14, 2017, plaintiff "[d]enies new or worsening concerns." Tr. 502.

- A November 3, 2017 progress note by Dr. Jennifer Scott indicates that plaintiff's MS had "stabilized," Tr. 523, and plaintiff "appears to be well stabilized on the current medication regimen, no changes are required." Tr. 535.

While the ALJ's explanation could have been more clearly stated, the court is able to reasonably discern the ALJ's path for the purpose of review. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015); *Jose v. Berryhill*, 2018 WL 1244763 at *6 (D. Or. Mar. 12, 2018) ("[E]ven if the ALJ could have stated each reason more clearly, the Court is still able to 'reasonably discern' the ALJ's path.").

The ALJ also found that Dr. Smoot's opinion was unpersuasive because it was "inconsistent" with state agency consultative physicians,

> Drs. Kehrli and Basham, who both assess the claimant with less restrictive exertional and postural . . . limitations that are better supported by the examination and treatment notes in the medical record.

Tr. 22 (citing Tr. 74-75, 90-91).

On August 8, 2017, Dr. Basham outlined the medical evidence she considered and plaintiff's subjective complaints. Tr. 64-71. She considered Dr. Smoot's opinion, explained why she disagreed with it, explained why she rejected plaintiff's symptom complaints, and provided her opinion about plaintiff's RFC. Tr. 73, 76. Dr. Basham found plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; can stand and walk two hours and sit about six hours in an eight-hour workday; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can never balance; can occasionally stoop, kneel, crouch, and crawl; and should avoid all exposure to hazards. Tr. 73-77.

On November 14, 2017, on reconsideration, Dr. Kehrli similarly reviewed plaintiff's file and found the same limitations. Tr. 79-94. While the ALJ found the opinions of Dr. Basham

and Kehrli persuasive, the ALJ "adopted a slightly more restrictive version of their [RFC] because recent examination and treatment notes, as well as statements made by the claimant, support additional limitations related to manipulation and changing between sitting and standing positions."  Tr. 23.

Plaintiff argues that Dr. Basham and Dr. Kehrli did not have access to a year's worth of neurology records, including his MRI results from November 2018, which showed ongoing disease with a "mixed pattern of progression and remission."  Pl. Br. 5 (citing Tr. 86, 90-91, 517-21, 536, 539-50).  Thus, plaintiff contends, the opinions of Dr. Basham and Dr. Kehrli were not in fact "better supported" by the medical record, as the ALJ found.  Reply 3-4.

The Commissioner responds that, while Drs. Basham and Kehrli "did not have the opportunity to review all of the records in this case, the ALJ had the opportunity to review the entire record" and acted in accordance with her responsibility to determine the persuasiveness of the medical evidence.  Def. Br. 19-20.  But the ALJ is not a medical expert.  Nevertheless, the opinions of Dr. Basham and Dr. Kehrli were made in 2017, close in time to Dr. Smoot's opinions, which were rendered in 2017.  They are consistent with each other and inconsistent with Dr. Smoot's opinions, as the ALJ explained.  Thus, the ALJ adequately explained why the state agency consultants' opinions are more persuasive, and the decision is supported by substantial evidence.

### B.    Brittany Farro, PA-C

Plaintiff began seeing PA Farro in the Eugene/Springfield area in July 2018.  Tr. 550. PA Farro stated in a January 9, 2019 letter:

> [Plaintiff] . . . is followed for clinic for his Multiple Sclerosis.  He had an exacerbation with 8+ new lesions in 2017 on top of already significant, diffuse spinal disease.  This has left him with ongoing sensory, motor, gait, and

neuropsychiatric deficits that make him permanently disabled. He is unable to
maintain employment due to his medical condition.

Tr. 551.

> The ALJ found PA Farro's opinion unpersuasive and rejected it in part because:

> A review of the examination, treatment, and radiological notes in the file, as well
> as statements made by the claimant regarding his activities of daily living,
> supports the finding that despite having some level of restriction due to his
> multiple sclerosis, the claimant does not have impairments that cause limitations
> in excess of those in the residual functional capacity.

Tr. 22 (citing Tr. 430, 432-33, 435, 490-91, 493, 501-05, 517, 520-21, 523, 526-29, 531-32, 534-

35, 536-37, 539-42, 545, 547-48). The ALJ used the same string of citations that she used to

support her finding that Dr. Smoot's opinion was unpersuasive. Some of these citations pertain

to PA Farro's records from July through November 2018 (Tr. 536-37 (MRI report), 539-42, 545,

547-48). The other citations are to records that date from April 2017 (Tr. 430, 432-33, 435),

August 2017 (Tr. 490-91, 493, 501-05), November 2017 (Tr. 523), December 2017 (Tr. 531-32),

February 2018 (Tr. 517, 520-21), and August 2018 (Tr. 526-29). It is impossible to determine

from the ALJ's broad string cite which specific "examination, treatment, and radiological notes"

and activities of daily living the ALJ relied upon in rejecting PA Farro's opinion. It is also

unclear how records from early 2017 undermine PA Farro's opinion from the latter half of 2018

and into 2019, particularly given that, in November 2018, results of a new MRI showed

"progression" of plaintiff's MS and he was undergoing more "aggressive" treatment "due to his

relapses" and "failed Avonex" treatment. Tr. 536, 539, 541.

> The ALJ further discounted PA Farro's opinion because it was inconsistent with

the opinions of the state agency physicians:

> Other opinions in the file, such as those of Drs. Kehrli and Basham, are
> inconsistent with the statement of Ms. Farro, as they indicate the claimant can

perform work at the light exertional level with additional postural, manipulative, and environmental limitations.

Tr. 22 (citing Tr. 74-75, 90-91).

But as discussed above, the state agency consultants did not consider any evidence past November 2017. While their opinions can be used to discredit Dr. Smoot's opinions, which were also from 2017, the state agency consultants did not have the opportunity to consider PA Farro's medical examinations, her opinion, and the results of plaintiff's November 2018 MRI.

Again, the Commissioner argues that "the ALJ had the opportunity to review the entire record." Def. Br. 19. But, again, the ALJ is not a medical expert. Without relevant medical opinion, the ALJ was not permitted to conclude that PA Farro's opinion from January 2019 was unsupported and inconsistent. *See Mary Ann C. v. Comm'r Soc. Sec. Admin.*, No. 3:20-CV-00296-CL, 2021 WL 1612297, at *5 (D. Or. Apr. 26, 2021) (concluding the ALJ erred in determining that a medical opinion was not consistent with that of the state agency consultants where the state agency consultants "were not privy to the reports of worsening visual acuity in 2019, nor the recommendation that Plaintiff undergo cataract surgery "when patient is ready"); *see also Fox v. Comm'r of Soc. Sec.*, No. 119CV00146LJOSAB, 2019 WL 6724355, at *15 (E.D. Cal. Dec. 11, 2019), *report and recommendation adopted,* No. 119CV00146LJOSAB, 2020 WL 469363 (E.D. Cal. Jan. 29, 2020) ("[T]here is no medical opinion opining on how the most recent medical imaging would impact Plaintiff's ultimate RFC. Absent adequate explanation of the record, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined her own limitations for Plaintiff. The Court finds that this was error."); *McHenry v. Berryhill*, 911 F.3d 866, 871-872 (7th Cir. 2018) ("an ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments"); *Mitsoff v. Comm'r of Soc. Sec.*,

940 F. Supp. 2d 693, 702 (S.D. Ohio 2013) (finding that state agency physician's review of the record, which did not include recent reports, did "not take into consideration a significant portion of the record, and therefore the ALJ's decision to adopt such an RFC is unsupported by substantial evidence). "Clearly, remand is necessary so the ALJ may subject Plaintiff's most recent MRI . . . to medical expert scrutiny." *Konda D. v. Saul*, 421 F. Supp. 3d 599, 615 (N.D. Ind. 2019).

Plaintiff asserts other grounds for remand, but it is unnecessary to reach those arguments, as the matter is remanded for the reasons discussed above.

## III.    Remand

When a court determines the Commissioner committed harmful error in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ failed to properly evaluate plaintiff's subjective symptom testimony and PA Farro's opinion. However,

the second requisite is not met, as the record is not fully developed and further proceedings are necessary. This court does not have to reach the third step of the credit-as-true inquiry.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED  June 3, 2021.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge
